IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TROY RUSSELL PHELPS**,<br><br>        Plaintiff,<br><br>        v.<br><br>**WELLPATH MANAGEMENT, INC (formerly CORRECT CARE SOLUTIONS, LLC), DOUGLAS COUNTY, DR. STEVEN BLUM, and DOE DEFENDANTS 1-5,**<br><br>        Defendants. | Case No. 6:22-cv-00462-IM<br><br>**OPINION AND ORDER** |

Benjamin Wright Haile, P.O. Box 2581, Portland, OR 97208. Attorney for Plaintiff.

Heath Fox, Fox Ballard, PLC, 1325 Fourth Ave., Suite 1500, Seattle, WA 98101. Attorney for Defendants Wellpath Management, Inc. (formerly Correct Care Solutions, LLC) and Dr. Steve Blum. Kenneth S. Montoya and Rebeca A. Plaza, Law Offices of Montoya, Hisel and Associates, 901 Capitol Street NE, Salem, OR 97301. Attorneys for Defendant Douglas County.

**IMMERGUT, District Judge.**

       Plaintiff Troy Russell Phelps, an inmate at the Douglas County Jail, filed suit against

Wellpath Management, Inc. (formerly Correct Care Solutions, LLC), Dr. Steven Blum, Douglas

PAGE 1 – ORDER

County, and five John Doe defendants, alleging both federal and state law claims arising out of failure to provide adequate medical care. Plaintiff brings two claims under 42 U.S.C. § 1983, one for failure to provide medical care resulting in a violation of Plaintiff's Fourteenth Amendment rights, and one for violating Plaintiff's due process rights. Plaintiff also brings two claims under state law, one for medical negligence and one for negligence.

Before this Court is Defendants Wellpath Management Inc. and Dr. Steven Blum's (collectively "CCS Defendants") Motion to Dismiss. For the following reasons, Defendants' Motion is GRANTED.

## BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint, ECF 1. Plaintiff was arrested and booked into the Douglas County Jail on May 31, 2017. *Id.* at ¶ 14. At the time of his booking, Plaintiff required a urethral catheter and self-catharized with a French straight catheter six to eight times daily. *Id.* at ¶ 15. On June 27, 2017, one of the John Doe defendants replaced Plaintiff's French straight catheter with another type of catheter, known as a Foley catheter. *Id.* at ¶ 17. Following replacement of the catheter, Plaintiff reported soreness at the opening of his penis, and eventually requested the removal of the Foley catheter altogether due to continued pain. *Id*. at ¶ 19.

Defendants switched Plaintiff back to a French catheter, but Plaintiff continued to complain of pain and instances of blood in his urine through the fall and winter of 2017. *Id*. at ¶ 20. Two urinalyses given in September of 2017 and December of 2017 failed to show infection. *Id.* at ¶¶ 21, 25. In the spring of 2018, a doctor at the Oregon Health and Sciences University ("OHSU") in Portland, Oregon referred Plaintiff for urethral reconstruction surgery due to a build-up of scar tissue in Plaintiff's urethra. *Id.* at ¶¶ 2, 34. Plaintiff underwent the first stage of

surgery on August 2, 2018, and the second stage on June 5, 2019. *Id.* at ¶¶ 39–40. Both surgeries were successful with no reported complications. *Id.*

Following Plaintiff's surgery, Plaintiff further alleges that a John Doe defendant incorrectly replaced his Foley catheter by inflating an anchoring bulb in the Plaintiff's urethra, rather than in his bladder. *Id.* at ¶ 2. This inflation ripped Plaintiff's urethral suture line, causing Plaintiff pain, and requiring Plaintiff to use a different type of catheter, known as a suprapubic catheter, for longer than would have otherwise been needed after his surgery. *Id.* Plaintiff's urethra remains severely damaged from the misuse of the Foley catheter in 2017 and the inflation of the catheter bulb in 2019. *Id.* at ¶ 44. Plaintiff also suffered discomfort and urethral bleeding following a replacement of his catheter by Defendants on or around November 21, 2019. *Id.* at ¶ 45.

## LEGAL STANDARD

A motion brought under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.,* 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th

Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

**DISUSSION**

CCS Defendants argue that Plaintiff's federal and state law claims are barred by the relevant statutes of limitations. Under Oregon law, a plaintiff must file claims of personal injury or medical negligence within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered. O.R.S. 12.110(4). Claims under 42 U.S.C. § 1983 borrow the forum state's statute of limitations for personal injury claims. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). Accordingly, the statute of limitations for actions arising under 42 U.S.C. § 1983 in Oregon is two years.

Plaintiff's claims arise from a series of related medical injuries that occurred between late June of 2017 and late November of 2019. ECF 1 at ¶¶ 15–45. Plaintiff filed the present case on

PAGE 4 – ORDER

March 23, 2022, well beyond the applicable two-year statute of limitations. Plaintiff argues, however, that his claims are viable because they were filed pursuant to the provisions of Oregon State House Bill 4212 ("H.B. 4212"), which extended the statutes of limitations for certain civil causes of action in response to the COVID-19 pandemic.

### A. H.B. 4212 and COVID-19-Related Tolling of Statute of Limitations

Oregon Governor Kate Brown declared a COVID-19-related state of emergency on March 8, 2020. Executive Order 20-03 (March 8, 2020). Three months later, in response to the ongoing pandemic, the Oregon State Legislature passed H.B. 4212, a wide-ranging bill that amended several existing statutes, declared a state of emergency, and created several new provisions under Oregon law. H.B. 4212, 80th Leg., 1st Spec. Sess. (Or. 2020). As is relevant here, Section 7(1) of H.B. 4212 enacted a tolling provision that suspended the statute of limitations for actions under O.R.S. Chapter 12, including medical malpractice and personal injury actions, to 90 days after the end of the COVID-19 state of emergency, stating that:

> If the expiration of the time to commence an action or give notice of a claim falls within the time in which any declaration of a state of emergency issued by the Governor related to COVID-19, and any extension of that declaration, is in effect, or within 90 days after the declaration and any extension is no longer in effect, the expiration of the time to commence the action or give notice of the claim is extended to a date 90 days after the declaration and any extension is no longer in effect.

H.B. 4212 § 7(1).

But H.B. 4212 did not suspend the statute of limitations for those specified causes of action indefinitely. As set forth in the very next part of the bill—Section 8 of H.B. 4212—

PAGE 5 – ORDER

Section 7 in its entirety, including the tolling provision of Section 7(1), was to be "repealed on December 31, 2021." H.B. 4212 § 8(1).[1]

As initially interpreted by courts, H.B. 4212 only applied to claims that expired on or after June 30, 2020—the effective date of the statute, rather than the beginning of the COVID-19 state of emergency. *See Bond v. Shriners Hospital for Children*, No. 3:20-cv-01943, 2021 WL 1343058, at *9 (D. Or. Mar. 1, 2021) (concluding that "Section 7 did not revive the statute of limitations for civil actions that had already expired prior to June 30, 2020."). A little over a year after H.B. 4212 went into effect, however, the Oregon legislature revisited the issue of suspending the statute of limitations for certain causes of action in response to the still-ongoing COVID-19 pandemic. Oregon State Senate Bill 813 ("S.B. 813"), which went into effect on July 14, 2021, clarified that H.B. 4212's tolling provision applied to claims that would have otherwise expired "on or after March 8, 2020," the date that Governor Brown initially declared a COVID-19-related state of emergency. S.B. 813 § 1(4)(a), 81st Leg., Reg. Session (Or. 2021). Notably, S.B. 813 did not amend or otherwise alter the firm repeal date set forth in Section 8 of H.B. 4212. On December 31, 2021, some five months after S.B. 813 went into effect, both Plaintiff and Defendant agree that Section 8 of H.B. 4212 repealed Section 7. ECF 12 at 7; ECF 17 at 3.

After several extensions, Governor Brown officially ended the COVID-19-related state of emergency on April 1, 2022. Executive Order 22-03 (April 1, 2022). Plaintiff filed the instant action on March 23, 2022—before the end of the state of emergency, but after the December 31, 2021 repeal of Section 7. Defendant argues Plaintiff's claims must be dismissed as time barred,

---

[1] The legislative text of Section 8 reads, in its entirety: "SECTION 8. (1) Sections 6 and 7 of this 2020 special session Act are repealed on December 31, 2021. (2) The repeal of section 6 of this 2020 special session Act by subsection (1) of this section does not affect the release status of a defendant determined under section 6 (3) of this 2020 special session Act." Oregon House Bill 4212 § 8. Section 6 of H.B. 4212 allowed the Chief Justice of the Oregon Supreme Court to extend or suspend statute of limitations for certain categories of cases. *Id.* at § 6.

as the statute of limitations for the latest of Plaintiff's claims would have expired in November of 2021, and thus Plaintiff's claims had to be filed by December 31, 2021 to fall within H.B. 4212's tolling provision. Plaintiff advocates for a reading of H.B. 4212 where litigants in Oregon had 90 days after the end of the COVID-19 state of emergency to file claims covered by Section 7(1), and argues that he filed his claims well within the applicable timeframe.[2]

### B. Analysis

When considering the meaning of an Oregon statute, courts in this district apply Oregon rules of statutory construction. *Powell's Books, Inc. v. Kroger*, 622 F.3d 1202, 1209 (9th Cir. 2010). The "paramount goal" is "discerning the legislature's intent." *State v. Gaines*, 346 Or. 160, 171 (2009). Oregon courts, interpreting Oregon law, have outlined three steps that courts must follow in ascertaining legislative intent. *Id.* (interpreting 2001 amendments to O.R.S. 174.020). First, a court must examine the text and context of the legislation in question. *Id.* Second, the court may consider pertinent legislative history proffered by a party, even if the court does not find ambiguity in the legislative text. *Id.* at 172. And finally, if the legislature's intent remains unclear after examining the text, context, and legislative history, "the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Id.*

#### 1. Text and Context

Turning first to the text of the statute, this Court finds Section 8 clearly and unequivocally repealed the entirety of Section 7 of H.B. 4212 on December 31, 2021. Section 8, in relevant part, reads that "Sections 6 and 7 of this 2020 special section Act are repealed on

---

[2] June 30, 2022 is 90 days after the COVID-19-related state of emergency was repealed, and would have been the last day that a claim could have been filed under Section 7, were Section 7 still operative after December 31, 2021. Oregon State House Bill 4212 § 7.

December 31, 2021." H.B. 4212 § 8(1). Though the legislature did not include a definition of "repeal" within the statute, it is not a word of cryptic or shifting meaning. "When the legislature provides a definition of a statutory term, we of course use that definition. Otherwise, we ordinarily look to the plain meaning of a statute's text as a key first step in determining what particular terms mean." *Comcast Corp. v. Dep't of Rev.*, 356 Or. 282, 295 (2014). Repeal, particularly in the legislative context, means to rescind or revoke a prior legislative act.[3] The plain meaning of Section 8, then, was to revoke the tolling provision of Section 7(1) of H.B. 4212 on December 31, 2021. *Drainage Dist. No. 7 of Washington Cnty. v. Bernards*, 89 Or. 531, 555 (1918) ("The general rule is that the repeal of a statute without any reservation takes away all remedies given by the repealed statute and defeats all actions pending under it at the time of its repeal."); *Newsom v. Greenwood*, 4 Or. 119, 121 (1871) ("[T]he effect of repealing a statute is to obliterate the statute repealed as completely as if it had never been passed . . . .").

Plaintiff's attempts to cast the text of the statute as ambiguous are unavailing. Plaintiff argues that "[a] party cannot have until June 30, 2022 to commence an action and simultaneously lose that right on December 31, 2021." ECF 17 at 3. But a party filing a claim after December 31, 2021 no longer had a right to commence an action on June 30, 2022, because the statute that gave them that right was revoked. Plaintiff is correct that "Sections 7(1) and 8 cannot coexist." *Id.* The sections were never meant to co-exist, because Section 7(1) only existed until December 31, 2021, when Section 8 became operative. It is neither uncommon nor impossible for a

---

[3] The Oxford English Dictionary defines "repeal" as "to recall or withdraw (a privilege, grant, etc.)" or "to revoke or rescind (something previously determined or set, esp. a law or sentence)." *Repeal*, *v.1*, OXFORD ENGLISH DICTIONARY (3rd ed. 2009). In Merriam-Webster, "repeal" is defined as "to rescind or annul by authoritative act" and, in its most common meaning, "to revoke or abrogate by legislative enactment." *Repeal*, MERRIAM-WEBSTER (10th ed. 1998). Likewise, Black's Law Dictionary defines "repeal" as "rescind" or "abrogation of an existing law by legislative act." *Repeal*, BLACK'S LAW DICTIONARY (9th ed. 2009).

legislature to pass a law and subsequently repeal that law by express language, as the legislature did here. *See* 1A Sutherland, *Statutes and Statutory Construction* § 23:7 (7th ed., 2021) ("A valid legislative enactment which contains an express provision repealing a particular act or a part of an act effects the repeal it describes.").

Turning next to the context of the statute, this Court again finds that the Oregon legislature intended for Section 7 of H.B. 4212 to become inoperative after December 31, 2021. Analysis of the context of a statute "may include prior versions of the statute . . . including any wording changes in a statute over time . . . ." *State v. Ziska/Garza*, 355 Or. 799, 806 (2014) (internal citations omitted). Context also includes statutes enacted in the same bill as the statute at issue. *State v. Branch*, 362 Or. 351, 360 (2018).

As previously described, H.B. 4212 was an expansive piece of legislation that aimed to tackle issues posed by COVID-19 across a range of areas, from the siting of emergency shelters to the use of videoconference technology at government meetings. In other portions of the bill, the legislature tied the repeal of various provisions to the repeal of a COVID-19 state of emergency, rather than a set date. Section 2 of H.B. 4212 states, for instance, that "Section 1 of this 2020 special session Act is repealed 30 days after the date on which the declaration of a state of emergency issued by the Governor on March 8, 2020, and any extension of the declaration, is no longer in effect." H.B. 4212 § 2. Section 47 similarly states that "Section 45 and 46 of this 2020 special session Act are repealed on the date on which the declaration of a state of emergency issued by the Governor on March 8, 2020, and any extension of the declaration, is no longer in effect." *Id.* at § 47.

The bill also included language specifying that certain provisions would remain in effect even if a particular section of the law were repealed. Section 8(2), for instance, states that with

PAGE 9 – ORDER

respect to Section 6, which deals with pretrial release of defendants in criminal actions, "[t]he repeal of section 6 of this 2020 special session Act by subsection (1) of this section does not affect the release status of a defendant determined under section 6(3) of this 2020 special session Act." *Id.* at § 8(2). And Section 12a provided that "the repeal of sections 10 and 11 of this 2020 special session Act by section 12 of this 2020 special session Act does not affect an application for the development of land for an emergency shelter that was completed and submitted before the date of the repeal." *Id*. at § 12a.

Considering the context of H.B. 4212 as a whole, it is clear that the legislature knew how to craft language that tied repeal to either the end of the COVID-19 state of emergency or that preserved certain rights created by the legislation even in the face of subsequent repeal. When a legislative body chooses to include language in one section of a bill but omits it in another section of that same act, it is presumed to be an intentional decision. *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 452 (2002) (internal citation omitted). This Court therefore finds that the legislature's decision to omit language tying repeal of Section 7(1) to the end of the state of emergency or language preserving the tolling provision after repeal is clear evidence of the legislature's intent to repeal the tolling provision on December 31, 2021.

Plaintiff argues that H.B. 4212 must be viewed within "the context that gave rise" to the statute and that when H.B. 4212 was passed, "nobody could predict the impact that COVID-19 would have on the world." ECF 17 at 5. Plaintiff's argument misses the mark, for two reasons. First, context in statutory interpretation refers to statutory context—prior statutes, or statutes enacted at the same time—not the broader social context to which Plaintiff appeals. *See Ziska/Garza*, 355 Or. at 806; *Branch*, 362 Or. at 360. Second, the legislature had the chance to revisit the firm repeal of Section 7 when it passed S.B. 813 more than a year into the COVID-19

PAGE 10 – ORDER

pandemic. The legislature knew that the state of emergency had been frequently extended and knew that it was at least possible that it could be extended past December 31, 2021. *See* Executive Order 21-15 (June 25, 2021) (extending the March 8, 2020, state of emergency for the eighth time). The legislature also knew that Section 8 would repeal the tolling provisions of Section 7 in a matter of months, returning the statute of limitations for most civil causes of action in Oregon to their pre-H.B. 4212 status. Despite this knowledge, the legislature chose not to revisit the inflexible repeal date. This choice must be read as evidence of the legislature's intent that Section 7 be repealed on December 31, 2021. *See Gaines*, 346 Or. at 177 n.16 (later-enacted statutes are relevant "for the limited purpose of demonstrating the legislature's adherence to certain conventions in legislative drafting or word usage.").

### 2. Legislative History and Maxims of Construction

Both Plaintiff and Defendant describe the relevant legislative history surrounding H.B. 4212 as "unavailing." ECF 12 at 6; ECF 17 at 5. This Court agrees. The legislative debate on H.B. 4212 occurred only on the floor, lasted just one hour, and did not include any discussion of Section 7. ECF 12 at 6. Nothing in the legislative history suggests that the legislature intended for Section 7's tolling provision to remain in effect after the December 31, 2021 repeal date and, given the lack of legislative history relevant to the particular section of the law at issue, this Court declines to give the proffered legislative history any weight in its analysis. *See Gaines*, 346 Or. at 171 ("A court need only consider legislative history 'for what it's worth'—and what it is worth is for the court to determine.").

Having found no ambiguity after considering the text and context of the statute, and finding legislative history to be of little aid in discerning legislative intent, this Court is not required to consider general maxims of statutory interpretation. *See Gaines*, 346 Or. at 172

PAGE 11 – ORDER

(concluding that a court "may resort to general maxims of statutory construction" if the legislature's intent remains unclear after examining text, context, and legislative history). This Court will, however, briefly address the three arguments that Plaintiff advances in support of his position, none of which convince this Court that the legislature intended for Section 7's tolling provision to extend beyond December 31, 2021.

Plaintiff first argues that, under Oregon law, "the repeal of a validating or curative act shall not affect any validation or cure theretofore accomplished." O.R.S. 174.070. Plaintiff notes that there is no Oregon case that cites this law, ECF 16 at 6, but argues nonetheless that Section 7(1) of H.B. 4212 was a curative act. *Id.* A "curative act," however, refers to a statute "enacted to cure defects in prior law. . .because of inadvertence or error in a statute's original enactment or administration." 1A Sutherland, *Statutes and Statutory Construction* § 41:5 (7th ed., 2021). Section 7(1) of H.B. 4212 temporarily paused the statute of limitations for certain causes of action during a global pandemic—it was not a statute enacted to "cure" a defective prior law, and Plaintiff cites to no authority to support his contrary interpretation.

Plaintiff next argues that, under Oregon law, "[w]here a statute is equally susceptible of two interpretations, one in favor of a natural right and the other against it, the former is to prevail." O.R.S. 174.030. Plaintiff's argument is again unavailing. First, this Court does not find Sections 7(1) and 8 of H.B. 4212 to be "equally susceptible of two interpretations." As discussed above, this Court finds that Section 8 of H.B. 4212 indicates the legislature's clear intent to repeal Section 7(1)'s tolling provision on December 31, 2021, rendering that provision inapplicable after that date. Second, an interpretation of H.B. 4212 that gives effect to the legislature's firm repeal of Section 7(1) is not an interpretation "against" Plaintiff's "right to a remedy for an injury." ECF 17 at 7. Under Oregon law, individuals have two years to bring

PAGE 12 – ORDER

causes of action for personal injury, medical malpractice, and the deprivation of constitutional rights under 42 U.S.C. § 1983. During a global pandemic that, for a time, limited access to the courts, the legislature created a temporary exception to this two-year statute of limitations. Although the repeal of Section 7(1) ended this temporary exception, it did not divest individuals of their right to seek a remedy for an injury within the traditional statute of limitations.

Finally, Plaintiff urges this Court to "liberally construe[]" H.B. 4212 to "advance the remedy for expected court delays introduced by the COVID-19 state of emergency." ECF 17 at 7–8. Given Section 8's express repeal of Section 7, however, such liberal construction would force this Court to either read language into the statute preserving Section 7's tolling provision beyond the repeal or to ignore the effect of Section 8 altogether. Such construction is expressly prohibited by Oregon law. O.R.S. 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted . . . ."); *see also Whipple v. Howser*, 291 Or. 475, 480 (1981) ("[W]e are not at liberty to give effect to any supposed intention or meaning in the legislature, unless the words to be imported into the statute are, in substance at least, contained in it.").

"Where the repeal is clearly stated, courts have no responsibility or authority but to follow and apply the legislative will as expressed." 1A Sutherland, *Statutes and Statutory Construction* § 23:7 (7th ed., 2021). The text and context of Section 7 and Section 8 of H.B. 4212 indicate a clear legislative will to extend the statute of limitation for certain causes of action in Oregon through—but not past—December 31, 2021. Because Plaintiff filed his Complaint beyond that date, this Court finds that his claims are barred by the statute of limitations.

## CONCLUSION

PAGE 13 – ORDER

For the foregoing reasons, this Court GRANTS the CCS Defendants' Motion to Dismiss. All claims against the CCS Defendants are hereby dismissed with prejudice.

**IT IS SO ORDERED.**

DATED this 18th day of November, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge